UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| PATRICIA CLARK, *Plaintiff*, v. AMICA MUTUAL INSURANCE CO., *Defendant.* |
|---|

Civil No. 3:16cv1573 (JBA)

June 6, 2018

## RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Patricia Clark brings this action against Defendant Amica Mutual Insurance Co. ("Amica"), Plaintiff's homeowner's insurance company, alleging breach of contract (Count Two), breach of the implied covenant of good faith and fair dealing (Count Three), unfair and deceptive trade practices in violation of the Connecticut Unfair Insurance Practice Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA") (Count Four), and seeking a declaratory judgment (Count One).[1] Defendant now moves [Doc. # 37] to dismiss all of Plaintiff's claims. For the reasons that follow, Defendant's Motion is granted as to Counts One and Three and denied as to Counts Two and Four.

### I. Facts Alleged

In 1997 Plaintiff purchased a residential property located at 380 Felt Road, South Windsor, Connecticut, which was built in 1984. (Am. Compl. ¶ 5.) In October of 2015, Plaintiff noticed a

---

[1] Because Plaintiff's claims for breach of contract and declaratory judgment overlap and offer the same substantive relief, "dismissal of the declaratory judgment count is of little consequence." (Pl.'s Opp'n at 5 n.1.) Inasmuch as there appears to be no necessity to retain the declaratory judgment count, the Court will dismiss Count One. Defendant's counterclaim for declaratory judgment remains pending. (*See* Def.'s First Amended Answer to Complaint [Doc. # 18] at 8.)

series of horizontal and vertical cracks in the basement walls of her home. (*Id.* ¶ 9.) In late Fall 2015 and Winter 2015/2016 she undertook an investigation of the damage, its cause, and methods of repair by consulting with contractors and engineers. (*Id.* ¶ 10.) She learned that the "pattern cracking" she observed was due to a chemical compound found in concrete walls constructed in the late 1980s and early 1990s with concrete likely supplied by the J.J. Mottes Concrete Company. (*Id.* ¶ 11.) In February of 2016, a local engineer familiar with the condition of Plaintiff's basement walls informed her of the substantial impairment to the structural integrity of her basement walls. (*Id.* ¶ 17.)

Plaintiff promptly notified Defendant of this condition of her basement walls. (*Id.*) She reads the terms of her homeowner's insurance policies that Defendant issued as providing coverage for the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or methods in construction. (*Id.* ¶ 19.) Since her basement walls are in a state of collapse, and that the collapse was the result of a covered cause, Plaintiff claims the damage to her basement walls should be a covered loss under the terms of one or more homeowner's policies issued by Defendant during the years that it covered Plaintiff's home. (*Id.* ¶ 21.) However, Defendant denied coverage for this claim by letter dated May 26, 2017 and postmarked June 9, 2017. (*Id.* ¶ 22.)

**II. Discussion**[2]

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

## A. Breach of Contract

### a. *The Contract Language*

The "Additional Coverages" Section of the relevant insurance policies, located in the Section captioned "Property Coverages" includes the following language:

> **8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: ...
>
> b. Hidden decay; ...
>
> f. Use of defective material or methods in construction, remodeling or renovation.
>
> Loss to an awning, fence, patio, pavement, swimming pool, underground pipe. Flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b.** [...] and **f.** unless the loss is a direct result of the collapse of a building.
>
> Collapse does not include settling, cracking, shrinking, bulging, or expansion.

(Ex. 3 (Pre-October 2006 Insurance Policy) to Def.'s Mot. to Dismiss at 5.) The policy further states under "Perils Insured Against" that Defendant does not insure for loss caused by "settling, shrinking, bulging or expansion, including resultant cracking of pavements, patios, foundations, walls, floors, roofs or ceilings." (*Id.* at 8.)

Under a separate Section called "Conditions," the policy again references the term "foundation," this time with respect to "Loss Settlement." (*Id.* at 11.)[3] It provides that

> To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

---

[3] The parties refer to this provision as the "coinsurance valuation" clause.

3

(a) Excavations, foundations, piers, or supports which are below the undersurface of the lowest basement floor;

(b) Those supports described in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement.

(*Id.*)

According to Defendant, the policies issued to Plaintiff that were operative prior to October 24, 2006 make clear that (1) they do not provide coverage for a collapse to a "foundation," (2) a "foundation" exists above the "lowest basement floor," and that (3) a "foundation" has "walls."[4]

### c. *The Term "Foundation" is Ambiguous*

Defendant focuses on Plaintiff's allegation that the "basement walls . . . were in a state of collapse." (Am. Compl. ¶ 20.) It argues that Plaintiff cannot succeed on her breach of contract claim because none of the insurance policies issued to Plaintiff by Defendant provide coverage for a collapse to a "foundation," which it contends clearly includes Plaintiff's basement walls. In response, Plaintiff maintains that the term "foundation" is ambiguous in the insurance policies and therefore must be construed against Defendant in favor of coverage.

Where policy terms are unambiguous those terms are accorded their natural and ordinary meaning. *Jacaruso v. Lebski*, 118 Conn. App. 216, 233 (2009). However, where a term is susceptible

---

[4] The collapse provision at issue does not define the term collapse. (*See* Ex. 3 to Def.'s Mot. to Dismiss); *see also Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 404 (D. Conn. 2017) (finding that an identical collapse provision did not expressly define the term "collapse"). Therefore, a collapse occurs where there has been any substantial impairment to the structural integrity of the building or any part of the building. *Beach v. Middlesex Assurance Co.*, 205 Conn. 246, 252 (1987). Defendant does not suggest that no collapse has occurred or that the *Beach* standard of collapse is inapplicable.

4

to more than one reading, the term is construed against the insurance company, as they drafted the policy terms. *New London County Mut. Ins. Co. v. Zachem*, 145 Conn. App. 160, 166 (2013). Ambiguous insurance policy terms are not only construed against the insurance company, they are construed in favor of coverage. *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 446-447 (D. Conn. 2010); *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 249-250 (1987).

Defendant acknowledges that courts in this district have previously held that the term "foundation" is ambiguous. *See, e.g., Roberts v. Liberty Mut. Fire Ins. Co.*, 2017 WL 3710062 (D. Conn. Aug. 28, 2017); *Gabriel v. Liberty Mutual*, 2015 WL 5684063, *4 (D. Conn. Sept. 28, 2015); *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 164 (D. Conn. 2014); *Karas v. Liberty Mutual Ins. Co.*, 33 F. Supp. 3d 110, 115 (D. Conn. 2014); *Bacewicz v. NGM Ins. Co.*, 2010 WL 3023882, *4 (D. Conn. Aug. 2, 2010). Those cases note that the term "foundation" could also mean the "footings" of a structure as a number of dictionaries define the term "foundation" as "the lowest load-bearing part of the building." *Karas*, 33 F. Supp. 3d at 115; *Belz*, 46 F. Supp. 3d at 163-16; *Gabriel*, 2015 WL 5684063 at * 4; *Metsack v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5797016, *6 (D. Conn. 2015). Indeed, in *Bacewicz*, the court specifically held on summary judgment that "a reasonable jury could find that the basement walls of the [plaintiffs'] house did not constitute the 'foundation' of the house." 2010 WL 3023882 at *4.

Nonetheless, Defendant claims it now raises new arguments based on the policy language at issue in this case that have not been addressed in any prior decision, which support the conclusion that the term "foundation" necessarily includes the property's "basement walls." (Def.'s Mot. to Dismiss at 10.) Defendant derives its definition of "foundation" not from the Additional Coverage section regarding "collapse," but from the "coinsurance valuation" clause. According to Defendant, the only reasonable interpretation of the term "foundation" which accounts for the

5

policies' use of the phrase "foundation walls," is that "foundation" refers to the to "the whole masonry substructure of a building," including the concrete walls which extend from the first floor of the home to the ground, whether the home has a basement or not. (*Id.* (citing Merriam-Webster.com, Merriam-Webster, n.d. Web. 9 Sept. 2017, www.merriam-webster.com/dictionary/foundation).)

As noted above, the coinsurance valuation clause states that when determining the replacement cost of the building before the loss, not to include the value of "**(a)** [e]xcavations, foundations, piers, or supports which are below the undersurface of the lowest basement floor" and "**(b)** [t]hose supports described in **(a)** above which are below the surface of the ground inside the foundation walls, if there is no basement." (Ex. 3 to Def.'s Mot. to Dismiss at 11.) Thus, Defendant maintains, "[t]he Policies' references to 'foundation walls' means that a foundation *must* be able to have a wall." (Def.'s Mot. to Dismiss at 12.) Moreover, Defendant contends that the phrase "below the undersurface of the lowest basement floor," whether modifying "foundation" or not, requires the conclusion that foundations can exist above the lowest basement floor (such as the basement walls here). (*Id.*)

Plaintiff maintains that the policies clearly provide coverage for the collapse of a building or any part of a building if that collapse is caused by hidden decay or defective materials or methods used in the construction of the home. (Am Compl. ¶19.) She reasons her basement must be considered "part of [the] building," because the word "basement" is defined as "the part of a building that is wholly or partly below ground level." *See* Merriam-Webster.com, Merriam-Webster, n.d. Web. 19 Dec. 2017, https://www.merriam-webster.com/dictionary/basement.

Moreover, Defendant's contention that the only reasonable interpretation of "foundation" necessarily includes the basement walls, has already been rejected by a Connecticut district court interpreting the coinsurance valuation clause upon which Defendant relies:

> [I]mplicit in the calculation are two key concepts: first, that a foundation can exist 'below the undersurface of the lowest basement floor,' which implies that a basement wall and a foundation are not *always* one and the same, and *second*, that the policy in at least some capacity differentiates homes constructed with and without a basement by distinguishing 'foundation walls . . . if there is no basement' from 'foundations below the undersurface of the lowest basement floor.'

*Metsack*, 2015 WL 5797016 at *7.[5] The Court agrees with the reasoning of *Metsack* that the language in the coinsurance valuation clause does not require that the term "foundation" be interpreted as *always* including basement walls. This conclusion is reinforced by the fact that the policy specifically references "foundation walls" in some places, while the exclusionary language in the additional coverage for collapse section refers only to "foundation," suggesting that although foundations may have walls, they must be equally able to be constructed without walls. Otherwise, there would be no need for the policy to specify "foundation walls" in some provisions of the policy as "foundation" alone would suffice in all instances.[6]

---

[5] The policies in *Metsack* as well as this case exclude coverage for loss relating to "an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock." (Ex. 3 to Def.'s Mot. to Dismiss at 5.) The *Metsack* court noted that "[w]ith the exception of 'foundation,' all of the terms used in the exclusion reference ancillary structures to the building itself," concluding that under the canon of construction *noscitur a sociis*, whereby the meaning of words may be guided by associated words, the term "foundation" might be interpreted as referencing a more ancillary structure than the wall of a basement room. *Metsack*, 2015 WL 5797016 at *7 n.2.

[6] The coinsurance valuation clause's exclusion of the value of "[t]hose supports in **(a)** above which are below the surface of the ground inside the foundation walls, if there is no basement,"

The last antecedent rule, if applied, does not alter the Court's conclusion that the definition of "foundation" is ambiguous. That "rule of contractual and statutory construction . . . provides that qualifying phrases, absent a contrary intention, refer solely to the last antecedent in a sentence." *Connecticut Ins. Guar. Ass'n v. Drown*, 314 Conn. 161, 189 (2014) (internal quotation marks omitted). Accordingly, Defendant asserts that in the valuation coverage clause where it states, "[e]xcavations, foundations, piers, or supports which are below the undersurface of the lowest basement floor," the phrase "below the undersurface of the lowest basement floor" modifies only "supports," and not the term "foundation." Defendant concludes that this means "foundations" are not below the basement floor, and therefore that the foundation must include the basement walls.

However, *Metsack* recognized, "a house may or may not have a separate 'footing' and 'foundation' depending on its construction." 2015 WL 5797016 *13. Thus, a reasonable reading of the clause is that the "foundation" and "supports which are below the undersurface of the lowest basement floor" may be separate elements of the house's support structure, depending on the house's construction. Moreover, even if this particular clause is referring only to the foundation above the undersurface of the lowest basement floor, which Defendant argues must include basement walls, it does so solely for purposes of determining the amount of insurance required to calculate the replacement cost of a building immediately before a loss. It does not necessarily follow that the foundation must be above "the undersurface of the lowest basement floor" simply because for that one calculation the only portion of the foundation that is excluded is that which is above

---

could be read to mean that it is only where there is no basement that walls are referred to as "foundation walls." (*See* Ex. 3 to Def.'s Mot. to Dismiss at 11.)

the basement floor. Indeed, the fact that the policy is distinguishing between below and above the basement floor could reasonably be read to indicate that the foundation may indeed exist both "below the undersurface of the lowest basement floor" and above it.

Although Defendant's reading of the policies is a reasonable interpretation of the word "foundation," it is not the only reasonable one. Therefore, the term "foundation" in the policies at issue here is ambiguous because it is "reasonably susceptible to more than one meaning." *See Bacewicz*, 2010 WL 3023882, * 4.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

In order to constitute a breach of the implied covenant of good faith and fair dealing, "the acts by which a defendant allegedly impedes the rights of a plaintiff to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 434 (2004). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *Habetz v. Condon*, 224 Conn. 231, 237-38 (1992).

Plaintiff's Complaint alleges that that Defendant breached its implied duty of good faith and fair dealing by "unilaterally altering the terms of the homeowner insurance policies issued to the insureds without any explanation as to the practical effect upon coverage resulting from the

9

change of the policy terms." (Am. Compl. ¶ 39.)[7] Moreover, Plaintiff alleges that Defendant "made no attempt to explain or disclose to its insureds the reason for the changes it made with the Additional Coverages section of the policy," (*id.* ¶ 36), and that Defendant did not alter its premium to discount the cost commensurate with the reduction in coverage or offer to provide the original coverage at an additional premium (*id.* ¶ 38). Plaintiff argues that this unilateral change was done in order to avoid clear liability for decaying concrete walls in Connecticut, thereby impeding Plaintiff's rights to recover for the collapse of those walls as defined by the Connecticut Supreme Court in *Beach v. Middlesex Assurance Co.*, 205 Conn. 246, 252 (1987).

However, when Plaintiff renewed her policy on October 24, 2006, she received an "Important Notice to Policyholders," which stated under "Reduced Coverage:"

> **Collapse** – Many courts have interpreted collapse coverage to apply when a structure is, or is likely to be, in imminent danger of collapse because of loss to its structural integrity. Since these decisions are contrary to the long-standing intent of Collapse coverage, the definition and terms have been revised to more explicitly express intent.

(Ex. 7 to Def.'s Mot to Dismiss at AH051B00.) Plaintiff does not dispute having received this notice, nor does she argue it is improper for the Court to consider that record at this stage of the case. Rather, she contends in her Opposition that there was no "meaningful notice" given to insureds because the information was buried within a renewal policy, and no "meaningful attempt to explain or disclose to its insureds the reason for the changes it made to the policy or its effect on coverage" because the notice only stated that it was in response to court interpretations of the term "collapse." (Pl.'s Opp'n at 15.)

---

[7] Plaintiff does not identify when she claims Defendant unilaterally altered the terms of the policies.

Plaintiff maintains that had Defendant "notified its insureds of this change and its true impact—that it extracted coverage for a known condition that may likely affect its insureds in Northeast Connecticut—insureds would have had the opportunity to find a different homeowner's insurance carrier that does provide effective collapse coverage," concluding that "the decision not to honestly inform its insureds of the effect of this change was clearly made with an intent to mislead or deceive its insureds and to induce them to remain customers." (Pl.'s Opp'n at 16.)

While the Court must generally accept Plaintiff's allegations as true, here they are directly contradicted by the language in the policy renewal forms, and despite Plaintiff's arguments to the contrary, Defendant gave clear notice to insureds, including Plaintiff, that there had been changes made to the coverage for a collapse and that such changes were made in response to courts' interpretations of what constitutes a collapse. Accordingly, Plaintiff could not have "reasonably expected to receive" coverage under the renewed policy, which is required to prevail on her breach of implied covenant of good faith and fair dealing claim. *See De La Concha*, 269 Conn. at 434.

Furthermore, the Connecticut Supreme Court's "case law makes clear [that] no claim for breach of the duty of good faith and fair dealing will lie for conduct occurring prior to, or during, the formation of a contract." *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 638 (2002). Based on *Macomber*, the Connecticut Superior Court in *Richard E. Musgrave, et al. v. State Farm Fire and Casualty Co., et al.*, concluded that the conduct in the formation of a contract, including a renewal of an insurance policy, cannot be the basis of a claim for breach of the implied covenant of good faith and fair dealing. TTD-CV-15-6009840-S (Conn. Super. 2017) (Cobb, J.). Plaintiff unsuccessfully attempts to distinguish her case from *Musgrave* because hers involves an amendment to policy language in the context of a long-term insurance relationship through the issuance of renewal homeowner's insurance policies. However, each renewal of an insurance policy

creates "a separate and distinct contract providing coverage for a specific term or period." *See Kane v. Am. Ins. Co.*, 52 Conn. App. 497, 501 (1999).[8]

For all these reasons, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

### C. CUIPA and CUTPA

CUIPA does not provide a private right of action, but the Connecticut Supreme Court has recognized "the existence of a private cause of action under CUTPA to enforce alleged CUIPA violations." *Mead v. Burns*, 199 Conn. 651, 663 (Conn. 1986). However, "conduct by an insurance broker or insurance company that is related to the business of providing insurance can violate CUTPA only if it violates CUIPA," because "the legislative determinations as to unfair insurance practices embodied in CUIPA are the exclusive and comprehensive source of public policy in this area." *State v. Acordia, Inc.*, 310 Conn. 1, 9-12 (2013); *see also Belz*, 46 F. Supp. 3d at 165 ("To succeed on such a CUTPA claim, a plaintiff must show that the defendant engaged in an act

---

[8] Neither of the two Connecticut Superior Court cases Plaintiff cites, where the court denied the defendants' motions to dismiss claims for breach of the implied covenant, indicate that there had been any notice sent to insureds such as was provided by Defendant here. *See Mark A. Cote, et al. v. Travelers Indem. Co. of America*, Docket No. TTD-CV-15-6008838-S (Conn. Super. 2015) (Cobb, J.) (attached as Ex. C to Pl.'s Opp'n); *Lynn M. Green v. Patrons Mutual Ins. Co. of Conn.*, TTD-CV-15-6009661-S (Conn. Super. 2016) (Cobb, J.) (attached as Ex. D to Pl.'s Opp'n.) Additionally, Plaintiff's reliance on *Wishneski v. Sielski*, 2016 WL 1038817, * 10 (Conn. Super. 2016) is misplaced. There, the court denied the defendant's summary judgment motion on plaintiffs' breach of the duty of good faith claim where the plaintiffs alleged "that the defendant's conduct or misrepresentations [were] incorporated into and [became] part of the contract at issue." *Wishneski*, 2016 WL 1038817, * 10. In contrast, here Plaintiff has not plead facts plausibly suggesting that Defendant made misrepresentations in the policies.

prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged.").

An insurer can be held liable for unfair settlement practices under CUIPA only when it engages in specifically prohibited acts "with such frequency as to indicate a general business practice." Conn. Gen. Stat. § 38a-816; *see also Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 848 (1994) ("the legislature has manifested a clear intent to except from coverage under CUIPA isolated instances of insurer misconduct"). Here, Plaintiff alleges that "[b]y failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonable clear as part of its general business practice, the defendant has engaged in conduct proscribed by the Connecticut Unfair Insurance Practices Act," namely Section 38a-816(6)(f). (*See* Am. Compl. ¶ 60.)

Plaintiff alleges that "[t]he defendant's participation in the insurance industry wide practice of denying coverage for concrete decay claims as part of its general business practice is further confirmed by its refusal to provide coverage in at least two (2) other instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the plaintiffs' policy." (*Id.* ¶ 55 (citing *Francis J. Boucher, Jr., et al. v. Amica Mut. Ins. Co.*, No. TTD-CV-12-6004826-S; *Roberge v. Amica Mut. Ins. Co.*, No. 3:15CV1262 (WWE), 2015 WL 9480008, at *1 (D. Conn. Dec. 29, 2015)).) Relatedly, Plaintiff's allegations include that Defendant participates in a cooperative organization of insurance companies called the Insurance Services Office, Inc. ("ISO"), through which Defendant "has knowledge of the number of claims in northeastern Connecticut that have arisen due to the form of hidden decay in the concrete of the basement walls of residential structures similar to the plaintiff's home" and of cases involving nearly identical policy language where courts awarded judgment against the insurer on another concrete decay claim. (Am. Compl. ¶¶ 45, 48-50.)

13

Despite these allegations, Defendant maintains that Plaintiff fails to sufficiently allege Defendant's conduct was part of its "general business practice." According to Defendant, "[p]roving a 'general business practice' requires more than merely asserting the practice exists or citing other unrelated cases supposedly contending the same types of claims and alleging bad faith allegations." (Def.'s Mot. to Dismiss at 23.) Defendant cites several cases where the Connecticut Superior Courts found that simply alleging other lawsuits had been filed was not sufficient. *See Charter Oak Fire Ins. v. Blue Sky Part.*, 2001 WL 1178318 (Conn. Super. Aug. 30, 2001) (motion to strike granted where allegations of general business practice were based on three pending lawsuits); *Rams II, LLC v. Mass. Bay Ins. Co.*, 2015 WL 3554789 (Conn. Super. May 11, 2015) ("[C]itations to other cases in a cause of action attempting to plead a general business practice in violation of CUIPA are proper only if the decision maker in those cases found the defendant to be in violation of CUIPA.").

Defendant argues that because Plaintiff does not point to any case where a plaintiff succeeded on claims of breach of contract, declaratory judgment, breach of implied covenant, or CUTPA, her allegations are insufficient to establish Defendant engaged in a "general business practice" of *unfairly* denying coverage for concrete decay claims. (Def.'s Mot. to Dismiss at 23.) In support thereof, Defendant cites *Roberts v. Liberty Mutual Fire Ins. Co.*, in which the court granted summary judgment for the defendant, noting "that the existence of other nonbinding decisions that deemed Liberty Mutual potentially liable would not make it 'reasonably clear' that Liberty Mutual actually was liable, and could not persuade a reasonable jury to find that Liberty Mutual violated CUTPA/CUIPA." (Def.'s Reply at 7-8 (citing *Roberts*, 264 F. Supp. 3d 394, 416 (D. Conn. 2017). Defendant thus claims that absent identification of any "decision" finding insurers liable for the claims brought by Plaintiff, Plaintiff cannot successfully allege a general business practice.

Defendant's argument misses the point. *Roberts* held that evidence of decisions where courts denied summary judgment, but still no liability had been found, could not persuade a reasonable jury to find that it was reasonably clear the concrete decay claim was covered under the policy. 264 F. Supp. 3d at 416.[9] *Roberts* did not, however, focus on whether allegations that a defendant denied a plaintiff coverage under the same factual circumstances as it denied several other insureds coverage could be sufficient for purposes of establishing a defendant's "general business practices." Plaintiff must only allege that Defendant's conduct occurs with sufficient frequency to constitute a "general business practice," which is accomplished here by referencing other cases where insureds were similarly denied coverage for concrete decay claims. That is a different question than whether the cases Plaintiff cites resulted in a finding that these business practices were unlawful, a distinction Defendant fails to recognize.

Plaintiff identifies several factually similar cases with nearly identical allegations to Plaintiff's, in which district courts in Connecticut have declined to grant motions to dismiss CUTPA/CUIPA claims. For instance, in *Belz*, the plaintiffs also alleged that the defendant insurance company refused to provide similar coverage in two other instances also involving concrete decay and identical policy language to theirs. 46 F. Supp. 3d at 167. In *Karas* the court found that allegations that the defendant refused to provide coverage in at least three separate instances involving other homeowners in nearly identical circumstances to the plaintiff's was

---

[9] At the pleading stage, the Court must take Plaintiff's allegations that it was reasonably clear to Defendant that the policies covered Plaintiff's claims as true when supported by factual allegations. Here, Plaintiff has alleged participation in the ISO and knowledge of at least one case, *Bacewicz v. NGM Insurance*, No. 3:08-CV-01530 (JCH), in which a court awarded judgment against an insurer on a concrete decay claim based on a similar policy language. (*See* Am. Compl. ¶ 50.)

sufficient to allege a general business practice. 33 F. Supp. 3d at 117; *see also Gabriel*, 2015 WL 5684063, at *5 (finding allegations that the defendant "denied coverage in at least four other cases involving similar facts and identical policy language" to "support a plausible inference that [the defendant] has engaged in an unfair settlement practice with sufficient frequency to indicate a general business practice.").

The Court sees no significant distinction between the allegations in Plaintiff's Complaint here and the allegations in *Belz*, *Karas*, or *Gabriel*, discussed above. Accordingly, Plaintiff's claim for CUTPA/CUIPA will not be dismissed.[10]

### III. Conclusion

For the foregoing reasons, Defendant's Motion is GRANTED in part and DENIED in part. Defendant's Motion is GRANTED insofar as it seeks dismissal of Plaintiff's claims for declaratory judgment and breach of the implied covenant of good faith and fair dealing, but denied as to the breach of contract and CUIPA/CUTPA Counts.

---

[10] Defendant also contends that Plaintiff's allegations, even if true, do not establish that Defendant's coverage positions are unfair settlement practices that violate CUIPA. Defendant points to Judge Underhill's recent comment that this is "an issue about which reasonable people can disagree. In other words, it's not a frivolous argument to say the collapse of a building means something different than cracks in your basement." (Ex. 8 (Transcript Excerpt from Hearing on Liberty Mutual's Motion for Summary Judgment in *Roberts*) to Def.'s Mot. to Dismiss.) However, Plaintiff has alleged that Defendant "arbitrarily refused to pay a claim which a reasonable person would determine is covered by" the policies issued by Defendant to Plaintiff and thus "failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." (Am. Compl. ¶ 53.) She also alleges Defendant gave a knowingly false and misleading reason for the denial of coverage. (*Id.* ¶ 51.) These allegations have been found sufficient at the pleading stage to state a claim for CUTPA where a general business practice has also been alleged. *See Gabriel*, 2015 WL 5684063, at *5; *Karas*, 33 F. Supp. 3d at 117.

IT IS SO ORDERED.

/s/
_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of June 2018.